Otto Bezouskas, Administrator of the Estate of John Bezouskas, Deceased, Appellant, v. Albert Kruger, Appellee.

Gen. No. 40,213.

Opinion filed February 1, 1939.

CHARLES A. BELLOWS, of Chicago, for appellant.

HINSHAW & CULBERTSON, of Chicago, for appellee; OSWELL G. TREADWAY, of Chicago, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from a judgment against plaintiff for costs entered in the circuit court of Cook county in a proceeding brought by plaintiff as administrator of

the estate of John Bezouskas, deceased, in which it is charged that John Bezouskas met his death through the negligence of the defendant. The court submitted the case to a jury, which returned a verdict of not guilty, upon which judgment was entered.

The specific charge in the declaration is that on December 19, 1935, defendant so carelessly and negligently operated the automobile which he was driving, that at a point designated as being near the premises known as 2841 south Ashland avenue in the city of Chicago, defendant struck John Bezouskas and so severely injured him that he died.

The motorman of a street car, being operated at or near the point where the accident is alleged to have occurred, testified to the effect that as he approached the vicinity of 2841 south Ashland avenue, he saw something lying on the tracks; that he stopped his car and saw two persons pick up the body of a man and carry him to an adjoining building; that the body was lying about six feet from the safety island on the west side of the street, and that the feet were partly on the safety island; that the street car being driven by the witness was southbound; that he could see ahead of him as much as a block; that the time was about 7 o'clock in the morning, and that the day was cloudy and that it was snowing; that the street car lights were on at the time, but that there were no street lights.

Another witness for plaintiff testified to the effect that he knew the deceased; that at about 7:35 o'clock on the morning in question, he saw a crowd of people near 2841 south Ashland avenue, standing on the safety island; that he went over and saw John Bezouskas lying partly on the safety island and partly on the car tracks, and that Bezouskas afterwards died in the hospital.

A police officer produced by the plaintiff as a witness, testified that on the day in question he saw and con-

versed with the defendant at the Brighton police station about 45 minutes after the accident. Plaintiff's counsel then asked the police officer the following question: "Q. What did you say to him and what did he say to you?" This question was objected to by counsel for defendant, and after a conference out of the presence of the jury, the court held that statements made by defendant to the officer at the time and place mentioned were "a part of the *res gestae*," overruled the objection and permitted the witness to testify. His testimony, in reply to interrogatories propounded by the court, was to the effect that he saw the defendant about 40 or 45 minutes after a man had been taken into Stein hall, which was apparently a room near the scene of the alleged accident; that this man was removed to the county hospital in an unconscious condition; that the witness at that time had no conversation with the defendant, but that he afterwards did have a conversation with him. This witness stated that he asked the defendant if he, defendant, was the driver of the car which was out in front of the station, and the defendant answered that he was; that defendant told the witness that he was going south on Ashland avenue at 25 to 28 miles an hour; that he saw a man on the safety island, and that "the thing happened so fast that he struck that man." The witness then stated that he asked defendant how far he went after he struck the man before he stopped, and that defendant said he went to the end of the safety island, swung his car away from the safety island to the west curb to clear the traffic; that defendant stated that he went back to where the man was lying in the car track, and that part of the man's body was in the car track and part on the safety island. The witness stated that he asked the defendant why he did not swerve his wheel when he saw the man, and that defendant said he could not do so because it all happened so fast; that the man was on the safety island

when he, the defendant, saw him, and that defendant heard the impact and went back to see what happened. The court then asked this witness the following questions and received the answers noted:

"Q. The man never stepped off into the car, and the car never got up onto the safety island?

"A. I am only telling the Court what he told me. It is either one way or the other.

"Q. Your reaction to it. The man on the safety island—the car must have gone past him?

"A. Part of the car must have gone by the man, because the man was hit by the mud guard.

"Q. Did you find any indications on the car?

"A. No, only a dent in the rear right mud guard, showing where the impact took place.

"Q. Can you prove it?

"A. He either stepped off or he stepped into it, one or the other.

"Q. Who did?

"A. The man on the island.

"Q. Stepped?

"A. Stepped.

"Q. In front of the car?

"A. Well, if he stepped directly off in front of the car, the front of the car would have hit him.

"Q. Then your conclusion is that part of the car hit him in the back?

"A. Or else he swerved a little bit, but he was in the rails.

"Q. You mean the man was so close to the edge of the safety island?

"A. There is only two inches between the safety island and the southbound, west track of the southbound rail, there is only about two inches in between there.

"Q. Did he say where the man was?

"A. Yes, he said he was about four feet from the north end of the safety island, where you get on the southbound car, where the man got off that car."

On cross-examination by defendant's counsel, this witness testified to the effect that he took a statement from the defendant on a piece of paper, and that the witness did not know where this statement could be found; that he examined his files and could not locate it, but that he recalled the answers given by the witness; that at the time the statement was taken, the witness willingly signed it; that the witness was perfectly sober; that the witness had defendant's statement at the inquest, but did not read it into the record; that the witness stated that defendant, in such statement, told the witness that he was at all times riding within the street car rails; that he, the police officer, found no eyewitnesses to the accident, and that a car could not run over the safety island because the abutment is more than 2 feet high and made of heavy concrete.

Plaintiff, the son of the decedent, testified as to the age of his father. Over objection, the witness was permitted to answer the following questions put by counsel for the plaintiff: "Q. Did you ever have occasion to watch your father when he crossed the street? A. Yes, sir. Q. Do you know whether he was careful? A. Yes, sir." At this point, defendant's counsel moved to strike the answers and the motion was sustained. Plaintiff attempted to prove the amount of funeral bills paid for the burial of his father, to which objection was made by counsel for defendant, which objection was sustained.

Over the objection of plaintiff's counsel, defendant was allowed to and did testify, and his testimony was to the effect that the car he was driving was just purchased by him, and that he had owned it about 3 weeks;

that on the morning in question at about 7:30 he was on his way to work and that it was snowing at the time; that the safety island upon which decedent was standing is about 4 feet wide and 50 feet long, raised from the street about 6 inches and built of concrete; that he was coming from the north going south, and that at the north end of this concrete safety island is a bumper made of metal; that he was proceeding at the rate of 25 to 27 miles an hour as his car approached the safety island, and that he was then straddling the inner rails of the street car tracks; that he saw the man on the safety island just a few feet before he got there, and that the man was then standing about a foot and a half to the west of the east side of the island and about 4 or 5 feet to the south of the end of the abutment; that he did not change the direction of his car as he proceeded and that the man stood in the same position; that the first indication the witness had that something was wrong, was when just about the time he had passed the man on the safety island, he heard a thump and looked back and saw the decedent lying across the tracks, and that the thump came from the back, and that at that time defendant was about 8 feet past the decedent. Defendant stated that he then coasted a little bit because there were cars coming north, and that he turned right around to the left and came back and stopped on the east side of the street, got out of his car and proceeded to where the man was lying, and that at that time, two men were picking the decedent up; that the witness picked up decedent's cap and walked over to the entrance of the building to where he had been taken; that he then went with the police to the police station and that he there made a report and signed a statement; that he afterwards went back to the police station to recover his car and that he then discovered that there was a dent on the right rear

fender of the car which was not there before the accident. He also stated that his brakes were good, and that from the time he first saw the decedent standing on the safety island, he did not again see him.

The grounds for reversal urged are that the court erred in refusing to permit plaintiff to prove the habitual care of the decedent while crossing streets; in refusing to allow plaintiff to prove funeral expenses against the defendant causing the wrongful death; in permitting defendant, who was disqualified as a witness, to testify, and in instructing the jury. It is also urged that the verdict is against the manifest weight of the evidence.

No eyewitness, except defendant, was produced at the trial. However, the written motion for a new trial which was filed in the cause, is supported by an affidavit by the attorney for plaintiff, which affidavit is supported by the affidavits of two apparently disinterested persons. They state, in substance, that prior to the trial, plaintiff's attorney was given the name of an alleged eyewitness by an attorney who formerly represented plaintiff in the cause, and that plaintiff's attorney, in the trial and here, employed investigators to subpoena the named witness, but that they were unable to locate such witness. If there were eyewitnesses, as stated in the affidavits, no showing was made before the trial began that any effort had been made to locate these witnesses, and no representation was made to the court before or during the trial that any such witnesses existed.

In *Casey v. Chicago Rys. Co.*, 269 Ill. 386, a somewhat similar state of facts was presented. In that case, the body of a boy was found on the street railway tracks about 11 o'clock in the evening and the finding was reported to the office of the street railway company. No one saw the accident, and the only evidence

that a street car had come in contact with a human being was that one of the cars operated on the street where the boy was found, was examined in the barn and upon the brake shoe on the side of the car, blood and some particles of flesh were found. There being no eyewitnesses and no facts susceptible of being proven which would in any way disclose how the boy came to his death, the plaintiff in that case, which was an action predicated upon the fact that the boy met his death through the negligence of the railway company, was allowed to prove the habits of the boy as to care, caution and prudence, as tending to raise the presumption that he was in the exercise of due care and caution for his own safety at the time he was killed. The motorman and conductor of the car upon which the blood and particles of flesh were found, both testified that the car in question on the evening in question was running at a rate of speed of about 7 or 8 miles an hour at the place where the boy was found, and that there was no unusual movement of the car, or anything to indicate that the boy had been struck, and in its opinion, the court said: .

"There was no direct proof and no facts proven from which it could be inferred that plaintiff in error was in anywise negligent or that this fatality was the result of any negligence on its part. The mere fact that the boy was killed does not impute negligence to plaintiff in error, and it does not follow, in the absence of eyewitnesses or any direct proof as to the occurrence, that plaintiff in error was negligent merely because proof on the part of defendant in error tended to raise the presumption that the deceased was in the exercise of due care and caution for his own safety. The person killed might be in the exercise of due care and caution for his own safety and still the death be the result of an accident for which no one is to blame.

"Because of the failure of defendant in error to make any proof tending to show negligence on the part of the plaintiff in error the court erred in refusing to give the peremptory instruction as requested by plaintiff in error."

In the instant case, we must conclude from the record that there is not one scintilla of evidence to suggest that the defendant was guilty of any negligence whatever. Therefore, any inquiry as to decedent's "habits," even if the questions propounded on the subject by plaintiff's counsel were in proper form, would be useless. The record indicates that the examination of the police officer by plaintiff's counsel and by the court was conducted, and he was questioned, in most respects, as though he were a witness to the accident, and we are of the opinion that the entire examination was improper. In view of the fact that plaintiff produced this witness, and that he was permitted to testify over defendant's objection, we must conclude that the court was not in error in permitting the defendant to testify. There being no evidence to justify a finding of guilty, our conclusion is that the other errors assigned need not be considered.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.